IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KENNETH EDWIN DICKSON,
    Plaintiff,

vs.                                  Case No. 5:06cv214/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

### REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. §§ 401, *et seq*. It is now before the court pursuant to Section 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.        PROCEDURAL HISTORY

        This suit involves two applications made under the Act. The first is an application for SSI, filed on April 29, 2004, and the second involves an application for DIB, filed on May 12, 2004 (*see*

Tr. 13). Plaintiff's applications were denied initially and on reconsideration (*id.*).[1] On June 7, 2006, following a hearing, an administrative law judge (ALJ) rendered a decision in which she found that Plaintiff was not under a "disability" as defined in the Act (Tr. 13–19). On August 25, 2006, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5–8). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.     FINDINGS OF THE ALJ

On June 7, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 13–19):

1) Plaintiff meets the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and is insured for benefits through June 7, 2006, the date of the ALJ's decision.[2]

2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.

3) Plaintiff's lumbar disc disease and protruding disc at T11–12 are considered "severe" based on the requirements in 20 C.F.R. §§ 404.1520(c) and 416.920(c).[3]

4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No.4.

5) Plaintiff's allegations regarding his limitations are not totally credible.

6) Plaintiff retains the residual functional capacity (RFC) to perform a significant range of light work, with the ability to occasionally climb, balance, stoop, kneel, crouch or crawl.

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on January 8, 2007 (Doc. 10).

[2] Thus, the time frame relevant to Plaintiff's appeal of the denial of DIB is September 25, 2003 (alleged onset) to June 7, 2006 (date last insured).

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

7)  Plaintiff is unable to perform any of his past relevant work (20 C.F.R. § 404.1565).

8)  Plaintiff is a "younger individual" between the ages of 45 and 49 (20 C.F.R. § 404.1563).

9)  Plaintiff has a "high school (or high school equivalent) education" (20 C.F.R. § 404.1564).

10) Transferability of skills is not an issue in this case (20 C.F.R. § 404.1568).

11) Plaintiff has an RFC to perform a significant range of light work (20 C.F.R. § 404.1567).

12) Based on an exertional capacity for light work, and Plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rules 202.20 and 202.21.

13) Plaintiff was not under a "disability" as defined in the Act, at any time through June 7, 2006, the date of the ALJ's decision (20 C.F.R. § 404.1520(g)).

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her/his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

    A.   Personal History[4]

Plaintiff was born on October 19, 1958, was forty-six years old when he applied for benefits, and was forty-seven years old at the time of the ALJ's decision (*see* Tr. 14, 51, 53). He has a high school education (Tr. 82). Plaintiff's past work experience includes employment as a dishwasher, painter, deck hand, carpenter's helper, taxi driver, and yard worker. He alleges that he became disabled on September 25, 2003, due to deteriorating discs in his back and problems with walking, and controlling his bladder and bowels.

    B.   Relevant Medical History[5]

The record in this case establishes that Plaintiff has degenerative disc disease of the lumbar spine and a protruding disc at T11–12.

The record of medical treatment shows that Plaintiff developed back pain after attempting to lift a television set in his home in August 2003. An x-ray performed on his lumbar spine revealed degenerative disc disease at multiple levels of the lumbar spine, coupled with the formation of some osteophytes. In December 2003, Syed Gilani, M.D., performed a consultative examination of

---

[4] Unless otherwise noted, information in this section is derived from the opinion of the ALJ (Tr. 13–19).

[5] Like before, information in this section is derived from the opinion of the ALJ unless otherwise noted. Additionally, the court notes that the record contains some evidence of mental impairments, but Plaintiff did not allege disability on this basis, the ALJ found Plaintiff's mental impairments to be non-severe, and Plaintiff has raised no issue in the instant appeal regarding the ALJ's consideration of his mental impairments. Thus, the summary of Plaintiff's medical history does not include any evidence regarding Plaintiff's mental impairments.

Plaintiff.[6] Dr. Gilani noted that Plaintiff was at that time working at a restaurant washing dishes (Tr. 167). Plaintiff noted that he could drive, do some housework, walk, and take care of himself and his personal needs (*id.*). Although Plaintiff presented with a cane, Dr. Gilani noted that he did not require use of the device to maintain his balance. Dr. Gilani also noted that, although Plaintiff complained of "pain all over," he did not see any physician or take any medications (Tr. 168). Plaintiff was diagnosed with mild degenerative disc disease of the lumbar spine; however, Dr. Gilani found no localized kyphosis, scoliosis, paraspinal muscle spasms, or tenderness about Plaintiff's spine upon examination (*id.*). Additionally, Plaintiff's grip strength and fine manipulation were normal. Although Plaintiff did exhibit limited straight leg raising and limited ranges of motion in his back, Dr. Gilani noted that these limitations were due to Plaintiff's subjective complaints of pain (*see* Tr. 168–69). Based on the record as it existed before the Social Security Administration on December 18, 2003, a State Agency medical consultant determined that Plaintiff retained the RFC to perform a full range of medium work (Tr. 162–79).

The record additionally shows that Plaintiff was examined by Dr. Lynn Garner on March 3, 2004 (Tr. 180). Plaintiff complained of stiffness and constant, severe, pain in his mid and low back, legs, and buttocks (*id.*). He noted that most physical activities increased the pain (*id.*). Plaintiff also noted that he has experienced increased frequency of urination and bowel movements, as well as diarrhea and difficulty emptying his bladder (Tr. 181). Plaintiff noted that he takes medications and was currently looking for light-duty employment (Tr. 180–81). Dr. Garner observed that Plaintiff had a normal gait and sat comfortably during the interview (Tr. 182). X-rays of Plaintiff's lumbar spine taken on the day of the examination showed mild anterior osteophytic changes, mild minimal disc space narrowing at the C3–4 level, and facet joint narrowing and mild subchondral sclerosis throughout the lumbar spine (Tr. 183). Pelvis x-rays revealed no definite abnormality and no significant arthritic change in either hip (*id.*). Finally, thoracic spine films showed a minimal thoracic scoliosis with some mild endplate changes, but no sign of a vertebral compression fracture

---

[6]Plaintiff previously applied for DIB in September 2003, but his application was denied initially, and he sought no further review of the denial (*see* Tr. 13). Dr. Gilani's December 2003 examination was apparently done in conjunction with Plaintiff's earlier claim for benefits, as the instant applications were filed in 2004.

Case No. 5:06cv214/RS/EMT

(*id.*). Plaintiff was diagnosed with lumbar facet arthrosis, thoracic spondylosis, and mild lumbar disc disease with no evidence of disc herniation, neural impingement, or spinal stenosis (*id.*).

Magnetic resonance imaging (MRI) tests performed on Plaintiff's thoracic spine on March 17, 2004, showed a small, left, paracentral disc protrusion at the T11–12 vertebral level, but no cord impingement, spinal stenosis, or bony abnormality (Tr. 194).

The most recent evidence of medical treatment reflects that Plaintiff continues to be followed by Firas Saleh, M.D., for chronic neck and back pain at the Brain and Spine Center (*see* Tr. 300–06 (treatment records from September 7, 2005, to January 25, 2006)). Plaintiff was treated with medications, including Mobic and Lortab for pain, and Elavil for symptoms of depression and sleeplessness (*see, e.g.*, Tr. 302, 303, 304). During an October 2005 visit, Dr. Saleh opined that Plaintiff's "trigger point tenderness" strongly suggested the diagnosis of fibromyalgia (Tr. 304). In January 2006, Dr. Saleh diagnosed Plaintiff with chronic neck and back pain, likely musculoskeletal; fibromyalgia; and tension headache (Tr. 301). He continued Plaintiff on medication but noted that if Plaintiff's symptoms persisted, trigger point injections would be considered (*id.*). Finally, in a request for food stamps completed by Dr. Saleh in October 2005, he asserted that Plaintiff was unable to work "until [his] pain gets controlled" due to fibromyalgia and chronic fatigue syndrome (Tr. 317–18).

C.   Other Information Within Plaintiff's Claim File

Dr. Michelle Mitchell completed a Physical RFC Assessment on December 18, 2003 (Tr. 170-79). She opined that Plaintiff was able to frequently lift or carry twenty-five pounds and occasionally lift or carry fifty pounds. He could stand, sit, or walk six hours in an eight-hour workday (Tr. 171). His ability to push or pull was unlimited (*id.*). No postural, manipulative, visual, communicative, or environmental limitations were noted (Tr. 172–74).

David Guttman, M.D., completed a Physical RFC Assessment on June 19, 2004 (Tr. 246–53). He opined that Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, and he could sit, stand, or walk six hours in an eight-hour workday (Tr. 247). His ability to push or pull was unlimited (*id.*). Regarding postural limitations, Dr. Guttman noted that due to his back pain Plaintiff could only "occasionally" (i.e., less than one-third of the time)

climb, balance, stoop, kneel, crouch, and crawl (Tr. 248).  Plaintiff, however, had no manipulative, visual, environmental, or communicative limitations (Tr. 249–50).

Lastly, Edward Holifield, M.D., completed a Physical RFC Assessment on November 3, 2004 (Tr. 292–99).  According to Dr. Holifield, Plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, and he could sit, stand, or walk six hours in an eight-hour workday (Tr. 293).  His ability to push or pull was unlimited (*id.*).  No postural, manipulative, visual, communicative, or environmental limitations were noted (Tr. 294–96).

V.      DISCUSSION

Plaintiff raises three issues on appeal.  First, Plaintiff alleges that the ALJ failed to properly evaluate "the severity of" his fibromyalgia (Doc. 19 at 11).  Next, Plaintiff contends the ALJ erred in finding that he could perform work without identifying any specific jobs that Plaintiff could perform (*id.* at 13).  Finally, Plaintiff contends the ALJ erred in her consideration of Plaintiff's testimony concerning pain (*id.*).

A.      Fibromyalgia

Plaintiff asserts that the ALJ erred in failing to find that his fibromyalgia was a severe impairment (Doc. 19 at 12).  Additionally, Plaintiff contends that in reaching her decision "the ALJ did not even factor in Dr. Saleh's diagnosis of fibromyalgia, as the only mention of it in her decision is when [she is] discussing the request for food stamps completed by Dr. Saleh in October 2005" (*id.*).

At step two of the sequential evaluation the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. § 404.1520(c).  The burden at this step is on the claimant.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a) Non-severe impairment(s).  An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b) Basic work activities.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include —
>
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>>
>> (2) Capacities for seeing, hearing, and speaking;

>     (3) Understanding, carrying out, and remembering simple instructions;
>
>     (4) Use of judgment;
>
>     (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
>     (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether a medical impairment is severe. The ruling provides in part:

> As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

In <u>Brady v. Heckler</u>, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that:

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that [his] impairment is not so slight and its effect is not so minimal.

<u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that a plaintiff's impairment is or is not trivial, only that the ALJ must properly justify her finding on that issue, and the ALJ's findings must be supported by substantial evidence.

In the instant case, the record reflects that Dr. Saleh, with the Brain and Spine Center, began treating Plaintiff in September 2005. At Plaintiff's initial visit, Dr. Saleh noted a diagnosis of "possible fibromyalgia," and at Plaintiff's next visit on October 11, 2005, he noted that "chronic back and neck pain with more than 26 tender trigger points and chronic generalized fatigue strongly suggest[] the diagnosis of fibromyalgia" (Tr. 304, 306). Additionally, on October 11, 2005, Dr. Saleh completed a food stamp "request for medical verification" form, on which he indicated that Plaintiff was unable to work due to "fibromyalgia [and] chronic fatigue syndrome" (Tr. 317). When Dr. Saleh next saw Plaintiff, in December 2005, he definitively diagnosed Plaintiff with fibromyalgia (Tr. 303) and did so again in January 2006 (Tr. 301).

In discussing the records of Dr. Saleh, the ALJ noted Plaintiff's complaints of chronic neck and back pain, as well as the MRI results from Plaintiff's throacic spine scan (i.e., a disc protrusion at T11–12), but she did not mention the fibromyalgia diagnosis, except to note Dr. Saleh's opinion on the food stamp form (*see* Tr. 16). The ALJ went on to state that Dr. Saleh's opinion "is entitled to little probative weight" for two reasons (Tr. 17). First, the ALJ stated that the opinion is "not accompanied by objective medical data," and second, the opinion was rendered "exactly one month after [Plaintiff] was first evaluated by [Dr. Saleh]" (*id.*).

The court concludes that the ALJ erred. Initially, it is not for this court to say that Plaintiff's fibromyalgia is or is not trivial where, as here, the ALJ failed to mention or discuss the diagnosis in determining Plaintiff's severe impairments, and correspondingly, failed to justify her finding (or lack thereof) that Plaintiff's fibromyalgia is a non-severe impairment.[7] To the extent the ALJ's opinion can be construed as altogether rejecting Dr. Saleh's diagnosis of fibromyalgia, she failed to support her findings by substantial evidence. The diagnosis of fibromyalgia is difficult because the disease often lacks medical or laboratory signs and is generally diagnosed mostly on an individual's described symptoms. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, the Seventh Circuit has held that requiring positive laboratory findings is error in cases of this nature. Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in Stewart v. Apfel, 245 F.3d 793

---

[7]Although the ALJ discussed Plaintiff's mental impairments and specifically found them to be non-severe (*see* Tr. 15), the ALJ made no such finding regarding Plaintiff's fibromyalgia.

(11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)). In Stewart, the court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective evidence. Thus, the ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed. Stewart, 245 F.3d at 793, 2000 U.S. App. LEXIS 33214, at *9, n.4. *See also* Moore, 405 F.3d at 1211 (reiterating the impropriety of focusing on the absence of objective findings corroborating claims of the impairment). Accordingly, in the instant case, the ALJ erred in discounting Dr. Saleh's opinion on the ground that it was not accompanied by "objective medical data." Moreover, although the food stamp form does not contain objective data, Dr. Saleh's records document the likely existence of fibromyalgia (*see, e.g.*, Tr. 304 (noting that Plaintiff had "more than 26 tender trigger points" on the same day Dr. Saleh completed the food stamp form)).[8] Additionally, as the court is well aware, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). *See also* Moore, 405 F.3d at 1212 (explaining that "a treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent"). Here, the ALJ's second reason for discounting the opinion of Dr. Saleh, a treating physician, was that the opinion was rendered one month after he began treating Plaintiff. However, the record reflects that Dr. Saleh continued to diagnose Plaintiff with fibromyalgia two, three, and four months after he initially saw Plaintiff. Additionally, in October

---

[8]The American College of Rheumatology has developed diagnostic criteria by which a person can be affirmatively diagnosed with fibromyalgia if he or she has widespread pain in combination with tenderness in at least eleven of eighteen specific tender point sites. *See* http://www.medicinenet.com/fibromyalgia/page3.htm; National Institute of Arthritis and Musculoskeletal and Skin Diseases, Questions and Answers About Fibromyalgia (1999), available at http://www.niams.nih.gov/Health_Info/Fibromyalgia/default.asp (both last visited January 7, 2008).

Case No. 5:06cv214/RS/EMT

2005 when the food stamp form was filled out, Dr. Saleh had rendered a diagnosis of <u>possible</u> fibromyalgia only, yet he still opined that Plaintiff was unable to work due to fibromyalgia and chronic fatigue syndrome.  Later, he <u>definitively</u> diagnosed fibromyalgia each time he saw Plaintiff. Thus, neither of the ALJ's reasons for discounting Dr. Saleh's opinion or diagnosis constitutes "good cause."[9]

       Finally, the court notes the Commissioner's argument that Plaintiff did not specifically allege disability due to fibromyalgia (Doc. 22 at 5).  While it is true that the ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability," <u>Pena v. Chater</u>, 76 F.3d 906, 909 (8th Cir. 1996) (quoting <u>Brockman v. Sullivan</u>, 987 F.2d 1344, 1348 (8th Cir. 1993)); *see also* 20 C.F.R. § 404.1512 (requiring that a claimant "bring to our attention everything that shows that you are . . . disabled"), in the instant case Plaintiff applied for benefits before he was diagnosed with fibromyalgia. Moreover, Plaintiff presented Dr. Saleh's records to the ALJ prior to the commencement of his hearing (*see* Tr. 336), and he testified during his hearing that he had been diagnosed with chronic fatigue syndrome and described the "unbearable pain" associated with the condition (*see* Tr. 347). Thus, the undersigned concludes that Plaintiff sufficiently brought the matter to the attention of the ALJ.  The Commissioner further asserts that "a diagnosis or possible diagnosis of fibromyalgia is not mentioned in the medical record until September 2005" (Doc. 22 at 5); however; the relevant period under consideration for DIB extended to June 7, 2006.  Thus, Dr. Saleh's repeated diagnoses of fibromyalgia should have been considered by the ALJ in reaching her ultimate conclusions, and the ALJ erred in failing to do so.

---

[9]The undersigned notes that the question of whether a claimant is disabled (that is, unable to work within the strictures of the Social Security Act) is reserved to the Commissioner, not to a physician.  *See* 20 C.F.R. § 404.1503. Thus, Dr. Saleh's opinion that Plaintiff was unable to work certainly was not binding on the Commissioner; however, the ALJ's reasons for discounting the opinion of Dr. Saleh and/or his diagnosis of fibromyalgia were improper.

Case No. 5:06cv214/RS/EMT

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993) (referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223–24 (11th Cir. 1991). A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir.1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir.1991) ("The record . . . is fully developed and there is no need to remand for additional evidence."); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216–17 (11th Cir. 1991); (finding that improperly refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability"). Here, the undersigned concludes that the evidence does not establish disability without a doubt, and remanding this case for a rehearing is the appropriate course. Upon remand, the ALJ should be required to specifically consider at step two whether Plaintiff's fibromyalgia is a "severe" impairment. Additionally, should the ALJ again discount the opinion of Dr. Saleh, the reasons for doing so shall be substantially supported by the record.

B.  ALJ's Finding that Plaintiff Could Perform Work, Without Identifying Specific Jobs

Plaintiff complains that the ALJ erred in failing to articulate specific jobs that he could perform. Relevant to this argument, the ALJ found that Plaintiff could not return to his past work, which required medium and heavy levels of physical exertion (Tr. 17). However, the ALJ found that Plaintiff was capable of performing substantially all of the full range of light work (*see* Tr. 16–17).[10] Therefore, the ALJ relied on Medical-Vocational Rules 202.20 and 202.21 to find Plaintiff "not disabled" (Tr. 18).

In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00. "The general rule is that after determining the claimant's [residual functional capacity] and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." Heckler v. Campbell, 461 U.S. 458, 462, 103 S. Ct. 1952, 1955, 76 L. Ed. 2d 66 (1983). However, "where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …." 20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a).

---

[10]Light work is defined in 20 C.F.R. §§ 404.1567(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Additionally, each finding that underlies the use of a particular grid must be supported by substantial evidence.  Finally, where the ALJ determines that a claimant has either no nonexertional impairments or insignificant nonexertional impairments that do not limit his ability to perform other work identified by the guidelines, then the ALJ may use the guidelines.  *See* 20 C.F.R. § 404.1569.

In the present case the ALJ first applied grid rule 202.20, which directs a finding of not disabled for a person who (1) is a younger individual (aged 45–49), (2) has an RFC for light work, (3) has a high school education, and (4) has previous "unskilled" work experience.  Next, the ALJ applied grid rule 202.21, which directs a finding of not disabled for a person who (1) is a younger individual (aged 45–49), (2) has an RFC for light work, (3) has a high school education, and (4) has previous "skilled or semi-skilled" work experience with no transferable skills.

Plaintiff does not argue that his qualifications failed to correspond to the job requirements identified by grids 202.20 or 202.21; rather, Plaintiff contends that the ALJ was required to identify the particular jobs that Plaintiff could perform.  This is not necessary, however, when an ALJ uses the grids.  Social Security rulings clarify that the table rules reflect the potential occupational base of unskilled jobs of approximately 2,500 medium, light, and sedentary occupations; 1,600 light and sedentary occupations; and 200 sedentary occupations — each occupation representing numerous jobs in the national economy.  *See* SSR 85-15.  Thus, the ALJ did not err in failing to specifically identify jobs that Plaintiff could perform.

Although Plaintiff has not specifically alleged that use of the grids was improper, in light the recommendation that this action be remanded, the undersigned would further recommend that the ALJ determine anew whether use of the grids is proper in light of Plaintiff's complaints of nonexertional impairments (i.e., pain), as discussed more fully below.  *See* <u>Walker v. Bowen</u>, 826 F.2d 996, 1002–03 (11th Cir. 1987) (exclusive reliance on the grids is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills").

C.  Evaluation of Plaintiff's Testimony Concerning Pain

Plaintiff contends the ALJ failed to properly consider the following complaints of pain:

> Mr. Dickson explained that his back pain is excruciating, he can't stand for a long period, can't bend and can't lift over 10 pounds. (Tr. 344). Mr. Dickson described his pain as starting at the end of his spine and going up middle ways up his back. (Tr. 345). He stated that his pain constantly stays at 6–8 on a 10 point scale. (Tr. 346). Mr. Dickson also testified that his pain causes his buttocks to go numb and that it will sometimes go down his legs and they will give out. According to Mr. Dickson, for him standing, sitting and walking are all a chore. (*Id.*). Mr. Dickson testified that he can lift about 5 pounds, walk about 100/200 feet, stand in one spot for about an hour before having to rest and sit for about a half an hour before having to move or get into his bathtub for therapy. (Tr. 347, 348). Mr. Dickson indicated that his son comes to his house and helps with household chores such as vacuuming and dishwashing. (Tr. 349).

(Doc. 19 at 14–15).

Pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, supra, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. Id.; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor, 786 F.2d at 1054; Holt, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of

the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[11]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, supra, at 1548–49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, the Commissioner acknowledges that the ALJ did not provide "the most detailed decision" (Doc. 22 at 4), but correctly notes that she identified the relevant pain standard (see Tr. 16 (ALJ's opinion, referencing 20 C.F.R. § 404.1529)). The Commissioner then asserts that a review of the ALJ's decision indicates that "she considered the record including objective and opinion medical evidence, treatment measures, effectiveness of treatment, testimony, activities, and work history in finding Plaintiff's allegations of symptoms and limitations not credible to the extent that he was disabled (Tr. 14–18)" (Doc. 22 at 4).

However, this court's review of the decision reflects that the ALJ provided only one specific reason for finding Plaintiff to be "not entirely credible" (Tr. 17). Specifically, the ALJ found that

---

[11]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Case No. 5:06cv214/RS/EMT

"the objective medical evidence . . . shows that the claimant has only mild degenerative changes in his lumbar spine" (*id.*). As previously noted, however, pain alone can be disabling, even when its existence is not supported by objective evidence. Marbury, 957 at 839. Thus, the ALJ can properly consider the lack of objective medical evidence, but it cannot be the only reason for discounting a claimant's complaints of pain (especially in a case involving fibromyalgia, which generally has no associated objective medical evidence). Here, though, the ALJ additionally noted that Plaintiff's "allegations regarding his limitations are not totally credible <u>for the reasons set forth in the body of the decision</u>" (Tr. 18) (emphasis added). Thus, turning to the "body of the [ALJ's] decision," the court notes that the ALJ summarized the medical evidence, noting at one point that Plaintiff appeared for a consultative examination with a cane, but use of the device was not necessary (Tr. 16). It would appear, therefore, that this was an additional reason for discounting Plaintiff's complaints, but the ALJ did not specifically say so. Similarly, elsewhere in the decision, the ALJ noted Plaintiff's protruding disc at T11–12, but further noted that there was no impingement or stenosis identified. Additionally, the ALJ also noted in the body of the decision that Plaintiff attempted to return to work during the time frame under adjudication (Tr. 14). Plaintiff's desire to return to work is inconsistent with disability and indicates that he did not view his pain as disabling. *See* Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir.1994) (claimant's statements that he was seeking work are inconsistent with disability). Thus, while there appears to be enough evidence in the record to support the ALJ's credibility finding, the ALJ's referral to the "body of the decision" does not build an accurate and logical bridge between the evidence and the result. *See* Green v. Shalala, 51 F.3d 96, 100–01 (7th Cir.1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994); Zblewski v. Schweiker, 732 F.2d 75, 78–79 (7th Cir.1984); Cline v. Sullivan, 939 F.2d 560, 563–69 (8th Cir.1991). Nonetheless, this court does not deem it necessary to reverse the ALJ's credibility finding at this point, nor accept Plaintiff's complaints as true, because the ALJ cited the correct pain standard and provided one specific reason,

and other more general reasons, for discounting Plaintiff's complaints.  Moreover, the reasons are supported by the record.  Instead, in light of the recommendation that this case be remanded, the ALJ should be directed upon remand to better articulate the grounds for her decision to find Plaintiff less than fully credible, since meaningful appellate review at this juncture is difficult.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this report and recommendation, and that the Clerk be directed to close the file.

At Pensacola, Florida this 10th day of January 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**